## In re HENRY SIEGEL CO.

(District Court, D. Massachusetts. June, 1914.)

1. BANKRUPTCY (§ 357*)—ORDER DECLARING DIVIDEND—REVIEW.

The correctness of an order declaring a dividend is to be determined with reference to the time when it was made, and if proper at that time the subsequent filing of further claims does not afford ground for subjecting it to review.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 541–544; Dec. Dig. § 357.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

† 89 Fed. vii, 32 C. C. A. xvii.          ‡ 89 Fed. xi, 32 C. C. A. xxvii.

2. BANKRUPTCY (§ 357*)—ORDER DECLARING DIVIDEND—REVOCATION—DISCRETION OF REFEREE.

Whether an order declaring a dividend, which was right when made, should be revoked because of the subsequent filing of a new and large claim, is a matter within the discretion of the referee, the exercise of which is not reviewable, except so far as it proceeds on erroneous principles of law; but where the petition of the new claimant for such revocation is denied, on the ground that the claim is not allowable as a matter of law, and the question may be doubtful, and the payment of the dividend will probably leave insufficient assets to pay the same dividends on the claim if finally allowed, the court may properly stay such payment until the matter can be determined by the appellate court.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 541–544; Dec. Dig. § 357.*]

In Bankruptcy. In the matter of the Henry Siegel Company, bankrupt. On review of two orders of referee. Affirmed.

The opinion by Olmstead, Referee, on the first petition, is as follows:

On May 5, 1914, the Department Store Trust, a creditor of said estate, which had proved a claim for accrued rent on the 7th day of April in the sum of $29,301.70, filed a petition to stay an order entered by me on the 27th day of April, 1914, declaring a second dividend of 10 per cent. to the creditors of said estate whose claims had been allowed. Subsequently, on the 7th day of May, an amendment was allowed to said petition. On the 6th day of May, 1914, said creditor filed a claim against said estate for damages sustained by it for the breach of its lease, or for the breach of leases in the nature of a claim for damages for future rent, in the sum of $1,920,350.43.

On March 31, 1914, Messrs. Tyler, Corneau & Eames, counsel for said creditor, filed a statement to the effect that it had a claim for future rent in the neighborhood of $1,000,000. The first dividend of 10 per cent. was declared on the 21st day of March. A first account of the trustees was filed on the 9th day of April, shortly after a month succeeding their appointment; and another account, according to section 47a (10) of the act, is not due from them until the expiration of two months from that time. On or about the 21st of April, I was informed by Mr. Charles B. Jopp, one of the three trustees, that he had on hand the sum of $242,000 in cash, and good accounts amounting to $198,000. I was also informed by counsel who are collecting these accounts, part of which are secured by conditional sales, that they are the best accounts they have ever handled, and practically the equivalent of cash. In my conference with Mr. Jopp as one of the officers of the court he also informed me that he had learned from the office of Messrs. Tyler, Corneau & Eames that their claim for future rent amounted to about $750,000. In a communication with Mr. Wright, a member of the firm of Tyler, Corneau & Eames, had by Miss May MacCarthy, the referee's clerk, Mr. Wright stated to her that their claim amounted to about the sum of $750,000.

Accordingly the sum of $150,000, which would be 20 per cent. of a claim of $750,000, was set aside for the possible proof of this claim. To pay a second dividend of 10 per cent., $110,000 was required on proofs of claims in the sum of $1,100,000. The sum of $260,000 was therefore set aside to pay this second dividend of 10 per cent.

The accounts, amounting to $198,000, were estimated by Mr. Jopp to be worth at least $75,000 in money, which, added to the $242,000 cash, amounted to $317,000 as available for dividend purposes. Taking from this the sum of $260,000, there was left a balance of $57,000 with which to meet further expenses of administration. At the same time, another computation, assuming that the claim of said creditor amounted to $1,000,000, and assuming that the

accounts of $198,000 were absolutely good, as in all probability they are, is as follows:

| | |
|---|---|
| Cash .......................................... | $242,000 00 |
| Accounts ...................................... | 198,000 00 |
| | |
| Total .................................... | $440,000 00 |

| | |
|---|---|
| Dividend of 10 per cent...................................... | $110,000 00 |
| Twenty per cent. for Department Store Trust Claim......... | 200,000 00 |
| | |
| Required for second dividend........................ | $310,000 00 |

Deducting $310,000 from the $440,000, leaves a balance of $130,000, of which, with a most liberal allowance for shrinkage, there ought to be an ample balance left for further dividends and expenses of administration.

The desire to pay the dividend at this time was concurred in by Mr. Charles F. Weed and Hon. Louis A. Fronthingham, the other two trustees, with whom as officers of the court I have had frequent conferences. The contention of the creditor is that the dividend to the merchandise creditors was improvidently declared. From the above explanation it will be seen that the subject and figures were carefully considered. Section 65 of the Bankruptcy Act (Act July 1, 1898, c. 541, 30 Stat. 563 [U. S. Comp. St. 1901, p. 3448]), relating to "Declaration and Payment of Dividends," provides the modus operandi of distribution. Probably no bankruptcy act ever contained such minute provisions for speedy distribution as the present act. Subdivision "b" contemplates that dividends shall be paid frequently, and as often as the condition of the estate will warrant. After the payment of the first dividend, when the amount of funds shall equal 10 per cent., a second dividend "shall be declared." It is certainly a great merit of the present act that dividends shall be declared often and speedily. Section 39a (1), under "Duties of Referees," imposes upon the referee the obligation to "declare dividends." Section 47a (9), under "Duties of Trustees," makes it incumbent on the trustees to "pay dividends within ten days after they are declared by the referee."

The next prerequisite to the payment of dividends imposes upon the referee the duty of determining "such claims as have not been, but probably will be allowed." As at the time of the declaration of the dividend, no information was possessed by me except the statement on file above alluded to, and the oral statement of Mr. Wright, I am of the opinion that a liberal provision was therefore made for any possible future allowance of the claim of this creditor subsequently filed on the 6th day of May, 1914, in a much larger amount than had been theretofore stated.

2. Acting upon the duty imposed upon me of determining whether this subsequently filed claim of $1,920,350.43 will probably be allowed I dismissed the petition for stay on the ground that in my opinion this claim would not be allowed in this largely increased sum, or in fact in any sum, and am of the opinion that this view is a further justification of the declaration of the dividend of April 27th. After a consideration of the claim itself, which is now a part of the record, and the record may always be considered, and after the consideration of the offers of proof by counsel and their arguments, I am of the opinion that the law governing the allowance of this claim is to be found in the case of Slocum v. Soliday, a decision by the Circuit Court of Appeals of this circuit, in an opinion rendered by Judge Putnam, 25 Am. Bankr. Rep. 460, 183 Fed. 410, 106 C. C. A. 56.

There are numerous allegations in the petitions and motions which are not supported by the evidence, and certainly no protest was made against the dividend by said creditor before its declaration.

I accordingly, for the above reasons, denied the motion to stay the payment of said dividend.

The opinion by Olmstead, Referee, on the second petition, is as follows:

This was a petition and amended petition filed May 7, 1914, by a creditor, the Department Store Trust, to review an order entered by me on the 27th

216 F.—60

day of April, 1914, declaring a dividend of 10 per cent. to the creditors whose claims had been allowed in said estate. Before filing said petition, said creditor had made a request of the trustee and their counsel, Mr. Nutter, that they, as the representatives of the creditors, should take a review from said declaration of a dividend, which request the trustees refused to comply with. Thereupon said creditor, through its counsel, Mr. Wright, of the firm of Tyler, Corneau & Eames, and Mr. Albert S. Woodman, filed said petition for review, requesting that the trustees be ordered to take a review, or that it be allowed to prosecute a review in the name of the trustees. After an extended hearing, and arguments of counsel, I denied said petitions. Thereupon said creditor filed this petition to review my exercise of discretion in denying the creditor the right to either take a review for itself, or to order the trustees to take a review, or to allow it to take a review in the name of the trustees.

My reason for denying these petitions is based upon the principle and practice established by the weight of authorities, that the creditor must work out his remedy through the agency of the trustee, who is the representative of all the creditors. It is true that General Order XXVII,[1] by the use of the word "creditor," would appear to authorize a creditor to act in the first instance. But this General Order is to be construed in connection with General Order XXI, 6.[2] The decisions under these two General Orders hold that a creditor under these circumstances has not the right to take a review, but must appeal to the trustee, or the court to order such review. Foreman v. Burleigh (C. C. A., 1st Cir.) 6 Am. Bankr. Rep. 230, 109 Fed. 313, 48 C. C. A. 376; Chatfield v. O'Dwyer (C. C. A., 8th Cir.) 4 Am. Bankr. Rep. 313, 101 Fed. 797, 42 C. C. A. 30; In re Lewensohn (C. C. A., 2d Cir.) 9 Am. Bankr. Rep. 368, 121 Fed. 538, 57 C. C. A. 600; In re Mexico Hardware Co. (D. C., N. M.), 28 Am. Bankr. Rep. 736, 197 Fed. 650, in which latter case the authorities and reasons for the rule are reviewed and considered. The procedure was the same under the former bankruptcy law. Glenny v. Langdon, 98 U. S. 20, 28, 25 L. Ed. 43.

In support of the same view I may be permitted to cite the case of Arti-Stain Co. (D. C., Mass., Ref.) 32 Am. Bankr. Rep. 640, No. 20,344, recently decided by me, and now pending on review [affirmed 216 Fed. 942], in which latter case an attempt was made to set forth somewhat fully the grounds and reasons for this rule of practice and procedure.

Tyler, Corneau & Eames, of Boston, Mass., and Albert S. Woodman, of Portland, Me., for petitioners.

Brandeis, Dunbar & Nutter, of Boston, Mass., for trustees.

MORTON, District Judge. The questions certified involve two petitions. In each the petitioners are the trustees of the Department Store Trust. As such trustees, they leased the store occupied by the bankrupt to Siegel & Vogel, by whom the lease was duly assigned to the bankrupt. The rent was about $300,000 per year. Subsequent to the bankruptcy the lessors retook possession of the property and leased it to other persons at a reduced rental.

The first dividend, 10 per cent., was declared on March 21, 1914, and was duly paid. On March 31, 1914, counsel for the petitioners wrote to the referee that the petitioners had a claim for damages on account of the failure of the bankrupt to carry through the original lease "in the sum of $1,000,000." This letter was not sworn to and was in no sense a proof of claim. A few days before April 27, 1914, the referee informed counsel for the petitioners that another dividend would shortly be declared, and understood that the counsel for the petitioners said that the claim would probably be about $750,000. No proof of it was promptly filed, and on the 27th of April the referee declared a second dividend of 10 per cent. on claims then proved and allowed. Notices

[1] 89 Fed. xi, 32 C. C. A. xxvii.  [2] 89 Fed. x, 32 C. C. A. xxiii.

of the declaration of this dividend were sent to creditors immediately after it had been declared.

On May 5th the first of these petitions was filed, which was subsequently amended, praying, in substance, that the referee would revoke the dividend order to allow the petitioners to file their proof of claim. On the next day they filed a proof of claim in the sum of $1,920,350.43 for damages which they claim to have suffered by reason of the bankrupt's failure to carry through the original lease. On the next day, May 7th, they filed the second of the petitions now before the court, praying, in effect, that the trustee in bankruptcy be directed to take a review of the dividend order, or that the petitioners themselves be authorized to take a review of that order in the name of said trustees. The referee declined to revoke or stay the dividend ordered, or to allow a review of the dividend order, and denied both petitions. The petitioners thereupon brought these proceedings to review his decisions. No defect or insufficiency in the formality of the proceedings before the referee is alleged. Two principal questions are presented:

(1) Whether the referee was right in refusing to direct the trustees to take a review of the order declaring a dividend, or to allow the petitioners to take such review in the name of the trustees.

(2) Whether the referee was right in refusing to stay and revoke the dividend in order to give the petitioners an opportunity to prove their claim, so that it could, if allowed, participate in the dividend.

[1] As to (1). The dividend order was right at the time when it was made. The claim in question was not scheduled; it had not been proved; no information whatever had reached the referee that it would be over $1,000,000. He reports that he has reserved sufficient assets to pay both dividends on that amount. The petitioners deny this. The matter is one as to which the judgment of the referee under whose immediate control the estate is being administered, and who is familiar with the property, is entitled to much weight. I cannot say upon the record before me that he erred on this point. Upon the facts stated in his certificate, he appears, in declaring the second dividend, to have acted with all due consideration for the petitioners' rights.

As the correctness of the dividend order is, of course, to be determined with reference to the time when it was made, not by what occurred thereafter, a review of it would not have brought before the court the subsequent proof of claim, and would plainly have been a futile proceeding. It therefore seems to me that the referee was right in refusing to direct or permit review of the dividend order in the name of the trustees.

[2] As to (2). Whether the dividend order, which was right when made, should be revoked, and the case reopened upon that point, was a matter which lay within the discretion of the referee, to the exercise of which no review lies, except so far as it proceeded upon erroneous principles of law. For somewhat analogous questions under Massachusetts practice, see Buswell v. Walcott, Mass. Practice, p. 119, et seq.; Fuller's Mass. Probate Law (3d Ed., by Alger) pp. 475 and 476. In denying the petition the referee may well have found that the petitioners had not been diligent in proving their claim, that the allowance of the petition meant litigation and long delay before the second dividend

could probably be paid, that sufficient assets had been reserved to protect the petitioners' claim to the amount originally stated, that the claim proved was over $900,000 in excess of that amount, and that it apparently rested upon principles of law which had been declared unsound by the Court of Appeals for this circuit. He may, not unreasonably, have suspected that such a large and late claim was made by the petitioners in the hope that the trustees in bankruptcy would see fit to compromise it, rather than to delay the settlement of the estate until the matter could be decided in the courts. I certainly do not think such views of the case were so erroneous and unfounded that action based upon them amounted to an abuse of judicial discretion.

The referee was bound to exercise his discretion upon correct principles of law. His opinion that the petitioners' claim was unfounded in law and was fully met by Slocum v. Soliday, 25 Am. Bankr. Rep. 460, 183 Fed. 410, 106 C. C. A. 56, decided by the Court of Appeals for this circuit, entered so fundamentally into his decision upon this petition that if he is in error concerning it, his discretion was improperly exercised and his action ought to be reversed. Richardson v. Lloyd, 99 Mass. 475. It seems to me, however, that in so holding the referee was right, and that the petitioners' claim is met and covered by the case just referred to. There is the possibility that the referee was mistaken upon that point, and the further possibilities that Slocum v. Soliday may be overruled, or that the law may be declared otherwise by the Supreme Court of the United States. Neither of these contingencies seems to me sufficiently probable to justify me in holding that the referee abused his discretion in disregarding them.

The payment of the second dividend will so reduce the assets of the estate that, in all probability, not enough will remain to pay both dividends on the petitioners' claim if it should hereafter be allowed for the full amount of $1,920,350.43. Money once paid out as dividends cannot be recovered from the creditors who receive it. Bankruptcy Act, § 65c. So that the referee's refusal to revoke and reopen the dividend amounts to a final judgment against the petitioners possibly involving a large sum of money. In view of these facts, the petitioners ought to be allowed to submit the questions raised by these proceedings to the Court of Appeals, and the dividend ought not to be paid out until there has been an opportunity for the petitioners to take a review or appeal from this decision.

The orders of the referee denying both petitions are affirmed. The dividend declared is not to be paid within ten days from the date hereof. If within that time the petitioners take and perfect a review or an appeal from this decision, the dividend declared is not to be paid out while said review or appeal is pending, and is being prosecuted by them with all possible diligence and dispatch.